UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WILLIAM JOHNSON,

        Plaintiff,

v.

UNKNOWN RICARDI et al.,

        Defendants.
_____/

Case No. 1:19-cv-254

Honorable Robert J. Jonker

OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Ricardi and Russell for failure to state a claim.

## Discussion

    **I.**    **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Michigan. The events about

which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Michigan. Plaintiff sues ECF Quartermaster Unknown Ricardi and ECF Nurse Practitioner Unknown Russell.

Plaintiff is serving a life sentence with the MDOC. The MDOC has housed him since 1994. Plaintiff has asthma, eczema, and a host of allergies. Plaintiff had several allergic reactions. Around 1997, the reactions were attributed to the state issued blankets. Those blankets are made of wool. MDOC medical staff issued Plaintiff a special accommodations detail allowing Plaintiff to use cotton blankets. Even 20 years later, in 2016, while Plaintiff was housed at the Chippewa Correctional Facility (URF), the medical staff informed Plaintiff that his special accommodations detail remained valid. Shortly thereafter, Plaintiff was transferred to ECF.

When Plaintiff arrived at ECF, the intake nurse informed him that his special accommodations detail was still valid. On February 23, 2016, Plaintiff informed Defendant Ricardi of the special accommodation and requested cotton blankets. Ricardi told Plaintiff he would check with healthcare. Two weeks passed with no cotton blankets. Plaintiff took matters into his own hands and contacted healthcare. Plaintiff received a copy of the special accommodations detail on March 3, 2016, and sent it on to Defendant Ricardi.

On March 7, 2016, Ricardi provided Plaintiff one cotton blanket. Plaintiff asked for another one because "everyone gets two blankets." (Compl., ECF No. 1, PageID.3.) Ricardi said at ECF, Plaintiff would only get one cotton blanket and that he should raise the issue with healthcare. The next day, Plaintiff wrote a grievance against Ricardi for treating Plaintiff differently than other prisoners.

On March 18, 2016, Defendant Russell called Plaintiff to healthcare. She did not examine Plaintiff at all. She simply informed Plaintiff that she had been told to cancel the special

accommodations detail. Russell also told Plaintiff that the decision was not up to her and that it was the product of a new policy that requires an allergic reaction to continue the detail. When Plaintiff explained that he had suffered such reactions years before, Defendant Russell told him that it had to happen again. Plaintiff's cotton blanket was confiscated.

Plaintiff abandoned his initial grievance against Ricardi for only providing one blanket. In its place, Plaintiff filed a grievance against Ricardi and Russell for retaliation.

On December 19, 2016, Plaintiff was transferred to LCF. LCF did not issue a cotton blanket detail. Instead, the healthcare staff there gave Plaintiff a detail for two extra cotton sheets.

Plaintiff contends that Ricardi and Russell conspired to violate Plaintiff's First Amendment rights by cancelling his special accommodations detail in retaliation for Plaintiff filing the grievance against Ricardi. Plaintiff also argues that the cancellation of the detail demonstrates deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment. Finally, Plaintiff claims that Defendants denied him equal protection of the laws in violation of the Fourteenth Amendment.

Plaintiff seeks a judgment declaring that Defendants violated his rights, injunctive relief reinstating the special accommodation detail, and compensatory and punitive damages in the amount of $350,000.00.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

3

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Deliberate Indifference

Plaintiff contends that the actions of Ricardi and Russell demonstrate deliberate indifference to his serious medical needs in violation of Plaintiff's Eighth Amendment rights. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be

5

drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff has failed to allege any facts that would permit an inference that his allergic reaction posed a substantial risk of serious harm. He does not identify his reaction at all. Nor does Plaintiff allege that Defendants were aware that his allergic reaction presented a substantial risk of serious harm. Therefore, Plaintiff has failed to properly allege either the objective or the subjective component of a deliberate indifference claim.

### IV. Equal Protection

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The amendment essentially directs that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Otherwise lawful actions of the state can be rendered unlawful if the actions improperly discriminate among persons similarly situated. For example, when a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.

Plaintiff alleges that he "was denied the same amount of issued blankets as similarly situated prisoners, due to his allergy, by Defendant Ricardi." (Compl., ECF No. 1, PageID.2.) Providing only one blanket to an inmate rather than two blankets does not invade a fundamental right. Moreover, persons with a physical disability are not a suspect class for purposes of an equal protection challenge. *Bullington v. Bedford Cty., Tennessee*, 905 F.3d 467, 477 (6th Cir. 2018)

(citing *Heller v. Doe*, 509 U.S. 312, 320 (1993)). Nor are prisoners "considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir.1998). Thus, there is no basis to conclude that prisoners with allergies are a suspect class.

There is some protection against state discrimination even where neither a fundamental right nor a suspect class is at issue. The Supreme Court acknowledged the viability of "class of one" equal protection claims in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), stating:

> Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *See Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.*, 488 U.S. 336 (1989). In so doing, we have explained that "'[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Sioux City Bridge Co., supra*, at 445 (quoting *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352 (1918)).

*Village of Willowbrook*, 528 U.S. at 564.

Plaintiff does not allege facts to demonstrate that other prisoners were similarly situated; his only allegation stating that other prisoners were similarly situated—the allegation quoted above---is entirely conclusory. *See, e.g., Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010) ("First, '[t]o satisfy [the Equal Protection Clause's] threshold inquiry, [plaintiffs] must allege that [they] and other individuals who were treated differently were similarly situated in all material respects.'") To be a similarly-situated person, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani v. Mich. Dep't of*

7

*Corr.,* 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Plaintiff says nothing about the other prisoners to support his claim that they are situated similarly to him.[1] Indeed, his allegation draws a significant distinction between him and the other prisoners: he contends he has an allergy that requires a different type of blanket. Therefore, Plaintiff has failed to state an equal protection claim.

V. **First Amendment Retaliation**

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

A. **Protected Conduct**

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir.

---

[1] In fact, Plaintiff claims that other prisoners receive more blankets; but, he does not identify a single such prisoner. That is fatal to his claim as well. *Bertovich v. Vill. of Valley View*, 431 F. App'x 455, 458 (6th Cir. 2011) (Court affirmed dismissal of "class of one" equal protection claims where Plaintiff "[did] not point to any individual who was treated differently . . . ."); *see also Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008) ("Although the plaintiffs claim that they have been treated differently from other individuals seeking rezoning, they fail to allege any specific examples of *similarly situated* individuals . . . ."); *Sanders v. City of Hodgenville*, 323 F. Supp. 3d 904, 911 (W.D. Ky. 2018) ("Sander's class-of-one claim fails as a matter of law . . . Sanders fails to identify any similarly situated individual who was treated differently.").

2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff's grievance against Defendant Ricardi appears to be constitutionally protected.

### B. Adverse Action

The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable of deterring a person of ordinary firmness*"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

The adverse action alleged by Plaintiff—the termination of his special accommodation detail for cotton blankets—is, possibly, sufficiently adverse to actually deter protected conduct. Plaintiff's allegations indicate that he would have to endure an allergic reaction to a wool blanket before he could obtain the special accommodation detail again. The "adverseness" of that consequence depends entirely on the nature and severity of Plaintiff's allergic reaction, if any.

Plaintiff fails to allege any facts from which the Court might infer that the nature and severity of Plaintiff's allergic reaction is sufficiently adverse to, objectively, deter a person of ordinary firmness. For that reason, Plaintiff allegations allow for the possibility that a defendant has acted unlawfully, but that is not enough to state a claim under *Twombly* and *Iqbal*.

### C. Adverse Action Motivated by Protected Conduct

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"

*Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff's allegations of retaliatory motive are entirely conclusory. The cancellation of the special accommodation detail followed the filing of the grievance by ten days. Without more, the events are not so temporally proximate that a retaliatory motive is apparent. Plaintiff does not allege any facts to suggest that Defendant Ricardi expressed a retaliatory intent or that he played any role in the cancellation of the special accommodation detail. Although Defendant Russell played some role in the cancellation—she communicated the decision to Plaintiff—Plaintiff does not allege any facts to suggest that Defendant Russell expressed a retaliatory intent or that she played any role in the decision to cancel the special accommodation detail.

Moreover, in an attempt to link Ricardi, as the person inclined to retaliate because he was grieved, and Russell, as the person who announced the cancellation of the detail, Plaintiff offers only an entirely conclusory allegation that the two conspired to retaliate against him. A

plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Here, Plaintiff offers nothing more than the conclusory statement that "Defendant deliberately conspired . . . ." (ECF No. 1, PageID.5.) Simply alleging the words "conspired" or "conspiracy" is not enough.

Plaintiff's allegations of adverse action are weak, but his allegations of retaliatory motive and conspiracy are utterly conclusory and insufficient to support a retaliation claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Ricardi and Russell will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:    June 7, 2019                 /s/ Robert J. Jonker
                                                     ROBERT J. JONKER
                                                     CHIEF UNITED STATES DISTRICT JUDGE